## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICHAEL AVENATTI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:20-cv-01541-SB |
| | ) | |
| FOX NEWS NETWORK, LLC, a Delaware | ) | |
| Limited Liability Company; SEAN | ) | |
| HANNITY; LAURA INGRAHAM; MARIA | ) | |
| BARTIROMO; HOWARD KURTZ; | ) | |
| SHANNON BREAM; BRET BAIER; TRISH | ) | |
| REGAN; RAYMOND ARROYO; JON | ) | |
| SCOTT; LELAND VITTERT; and | ) | |
| JONATHAN HUNT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
### MOTION TO DISMISS THE AMENDED COMPLAINT

ROSS ARONSTAM & MORITZ LLP

*Of Counsel*:

David E. Ross (Bar No. 5228)
Eric D. Selden (Bar No. 4911)
Eric M. George (*admitted pro hac*)       R. Garrett Rice (Bar No. 6242)
Richard A. Schwartz                        100 South West Street, Suite 400
Katherine F. Murray                        Wilmington, Delaware 19801
BROWNE GEORGE ROSS                         (302) 576-1600
  O'BRIEN ANNAGUEY & ELLIS LLP             dross@ramllp.com
2121 Avenue of the Stars                   eselden@ramllp.com
Suite 2800                                 grice@ramllp.com
Los Angeles, California 90067
(310) 274-7100                             *Attorneys for Fox News Network, LLC, Sean*
                                           *Hannity, Laura Ingraham, Maria Bartiromo,*
                                           *Howard Kurtz, Shannon Bream, Bret Baier,*
                                           *Trish Regan, Raymond Arroyo, Jon Scott,*
March 3, 2021                              *Leland Vittert, and Jonathan Hunt*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

TABLE OF DEFINITIONS...................................................................................... vii

NATURE AND STAGE OF THE PROCEEDINGS .................................................1

SUMMARY OF THE ARGUMENT .......................................................................1

STATEMENT OF FACTS .......................................................................................3

LEGAL STANDARD...............................................................................................9

ARGUMENT ..........................................................................................................10

I.      MR. AVENATTI'S CLAIM IS BARRED BY CALIFORNIA'S
        CONTROLLING STATUTE OF LIMITATIONS ........................................10

II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION.....................12

        A.      The Challenged Statements Are Substantially True ................................13

        B.      Mr. Avenatti Has Not Pled Actual Malice As To Any Defendant ........................16

        C.      Mr. Avenatti Has Not Alleged Any Recoverable Damages .................................19

CONCLUSION........................................................................................................20

## **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page(s)**

*Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co.*,
  223 F. Supp. 3d 207 (D. Del. 2016) .................................................................. 9

*Anderson v. Hearst Publ'g Co.*,
  120 F. Supp. 850 (S.D. Cal. 1954) .................................................................. 20

*Annette F. v. Sharon S.*,
  15 Cal. Rptr. 3d 100 (Cal. Ct. App. 2004) ...................................................... 18

*Anschutz Entm't Grp., Inc. v. Snepp*,
  90 Cal. Rptr. 3d 133 (Cal. Ct. App. 2009) ............................................... 19, 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................... 9, 11

*Beilenson v. Superior Ct.*,
  52 Cal. Rptr. 2d 357 (Cal. Ct. App. 1996) .............................................. 15, 17

*Bell v. Nat'l Republican Cong. Comm.*,
  187 F. Supp. 2d 605 (S.D. W. Va. 2002) ........................................................ 17

*Brewer v. Dungan*,
  1993 WL 441306 (N.C. Super. Ct. June 30, 1993) .................................... 14, 15

*Bull Int'l, Inc. v. MTD Consumer Grp., Inc.*,
  654 F. App'x 80 (3d Cir. 2016) ....................................................................... 3

*In re Cable News Network*,
  106 F. Supp. 2d 1000 (N.D. Cal. 2000) ..................................................... 19, 20

*Campanelli v. Regents of Univ. of Cal.*,
  51 Cal. Rptr. 2d 891 (Cal. Ct. App. 1996) ..................................................... 13

*City of Newark v. Delmarva Power & Light Co.*,
  497 F. Supp. 323 (D. Del. 1980) ...................................................................... 9

*Clifford v. Trump*,
  339 F. Supp. 3d 915 (C.D. Cal. 2018), *aff'd,* 818 F. App'x 746 (9th Cir.
  2020), *petition for cert. filed*, No. 20-602 (Oct. 29, 2020) ..................................... 16

*Dorsey v. Nat'l Enquirer, Inc.*,
  973 F.2d 1431 (9th Cir. 1992) ........................................................................ 16

*Dostert v. Wash. Post Co.*,
  531 F. Supp. 165 (N.D. W. Va. 1982) ............................................................. 14

*Dymond v. Nat'l Broad. Co.*,
    559 F. Supp. 734 (D. Del. 1983) ...........................................................10

*Eastwood v. Nat'l Enquirer, Inc.*,
    123 F.3d 1249 (9th Cir. 1997) ........................................................17, 18

*Elliott v. Marist Bros. of the Schs., Inc.*,
    675 F. Supp. 2d 454 (D. Del. 2009) ......................................................10

*Ferlauto v. Hamsher*,
    88 Cal. Rptr. 2d 843 (Cal. Ct. App. 1999) ............................................15

*Firth v. State*,
    706 N.Y.S.2d 835 (N.Y. Ct. Cl. 2000), *aff'd*, 287 A.D.2d 771
    (N.Y. App. Div. 2001) ...........................................................................11

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) .........................................................................16, 17

*Green v. Cortez*,
    199 Cal. Rptr. 221 (Cal. Ct. App. 1984) ..............................................16

*Handelsman v. S.F. Chronicle*,
    90 Cal. Rptr. 188 (Cal. Ct. App. 1970) ................................................14

*Harkonen v. Fleming*,
    880 F. Supp. 2d 1071 (N.D. Cal. 2012) ................................................12

*Harris v. Dillman*,
    2008 WL 2383939 (E.D. Cal. June 6, 2008) .........................................12

*Harte-Hanks Commc'ns v. Connaughton*,
    491 U.S. 657 (1989).........................................................................16, 17

*Hildebrant v. Meredith Corp.*,
    63 F. Supp. 3d 732 (E.D. Mich. 2014)..............................................13, 14

*Hopkins v. Keith*,
    348 So. 2d 999 (La. Ct. App. 1977).......................................................15

*Jackson v. Paramount Pictures Corp.*,
    80 Cal. Rptr. 2d 1 (Cal. Ct. App. 1998) ...............................................19

*Johnson v. Warner Bros. Entm't, Inc.*,
    2017 WL 588714 (D. Del. Feb. 14, 2017) .......................................10, 12

*Kalpoe v. Superior Ct.*,
    166 Cal. Rptr. 3d 80 (Cal. Ct. App. 2013) ...........................................19

*King v. Am. Broad. Cos.*,
   1998 WL 665141 (S.D.N.Y. Sept. 28, 1998) ..........................................................................19

*Maheu v. Hughes Tool Co.*,
   569 F.2d 459 (9th Cir. 1978) .................................................................................................13

*Maryland v. Pringle*,
   540 U.S. 366 (2003) ...............................................................................................................15

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496 (1991) ............................................................................................2, 13, 15, 16

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
   674 F.3d 369 (4th Cir. 2012) .................................................................................................18

*McCafferty v. Newsweek Media Grp., Ltd.*,
   955 F.3d 352 (3d Cir. 2020) ..................................................................................................17

*McFarlane v. Esquire Magazine*,
   74 F.3d 1296 (D.C. Cir. 1996) ...............................................................................................17

*Michel v. NYP Holdings, Inc.*,
   816 F.3d 686 (11th Cir. 2016) ..........................................................................................17, 18

*Monitor Patriot Co. v. Roy*,
   401 U.S. 265 (1971) ...............................................................................................................16

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ........................................................................................................2, 17, 18

*Nanji v. Nat'l Geographic Soc'y*,
   403 F. Supp. 2d 425 (D. Md. 2005) .......................................................................................14

*Nat'l Iranian Oil Co. v. Mapco Int'l, Inc.*,
   983 F.2d 485 (3d Cir. 1992) ..................................................................................................10

*Newton v. Nat'l Broad. Co.*,
   930 F.2d 662 (9th Cir. 1990) .................................................................................................17

*Nunes v. Cable News Network, Inc.*,
   2020 WL 2616704 (E.D. Va. May 22, 2020) ..........................................................................1

*Nunes v. Cable News Network, Inc.*,
   2021 WL 665003 (S.D.N.Y. Feb. 19, 2021) ..........................................................................20

*O'Hara v. Storer Commc'ns, Inc.*,
   282 Cal. Rptr. 712 (Cal. Ct. App. 1991) ...............................................................................19

*Ocala Star-Banner Co. v. Damron*,
    401 U.S. 295 (1971).................................................................................16, 17

*People v. Cross*,
    187 Cal.Rptr.3d 139 (Cal. 2015)...........................................................14

*People v. Kraft*,
    99 Cal. Rptr. 2d 1 (Cal. 2000)..............................................................15

*People v. Tom*,
    331 P.3d 303 (Cal. 2014) (Liu, J., dissenting) ........................................14

*Perlman v. Vox Media, Inc.*,
    2020 WL 3474143 (Del. Super. Ct. June 24, 2020) ...............................11

*Piracci v. Hearst Corp.*,
    263 F. Supp. 511 (D. Md. 1966), *aff'd*, 371 F.2d 1016 (4th Cir. 1967) ................................14

*Reed v. Gallagher*,
    204 Cal. Rptr. 3d 178 (Cal. Ct. App. 2016)..........................................18

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
    302 F. Supp. 3d 1005 (N.D. Cal. 2017) ...........................................12, 17

*Roberts v. McAfee, Inc.*,
    660 F.3d 1156 (9th Cir. 2011) .........................................................10, 11

*Rosales v. City of Eloy*,
    593 P.2d 688 (Ariz. Ct. App. 1979)....................................................13, 14

*Rouch v. Enquirer & News of Battle Creek Mich.*,
    487 N.W.2d 205 (Mich. 1992)...........................................................13, 15

*Simonson v. United Press Int'l, Inc.*,
    654 F.2d 478 (7th Cir. 1981) ...............................................................14

*Sivulich v. Howard Publ'ns, Inc.*,
    466 N.E. 2d 1218 (Ill. App. Ct. 1984) .................................................14

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)...............................................................17, 18, 19

*Taus v. Loftus*,
    54 Cal. Rptr. 3d 775 (Cal. 2007).........................................................12

*Triestman v. Slate Grp., LLC*,
    2020 WL 1450562 (D. Del. Mar. 25, 2020) .........................................10

*Ullum v. Am. Kennel Club*,
    21 N.Y.S.3d 210 (N.Y. App. Div. 2015) ...................................................11

*Underwager v. Channel 9 Austl.*,
    69 F.3d 361 (9th Cir. 1995) ...................................................................12

*Van Buskirk v. Cable News Network, Inc.*,
    284 F.3d 977 (9th Cir. 2002) .................................................................13

*Vogel v. Felice*,
    26 Cal. Rptr. 3d 350 (Cal. Ct. App. 2005)............................................17

*Wheeler v. Twenty-First Century Fox*,
    322 F. Supp. 3d 445 (S.D.N.Y. 2018)...................................................15

*Yeager v. Bowlin*,
    693 F.3d 1076 (9th Cir. 2012) ..............................................................11

## Statutes and Rules

10 *Del. C.* § 8121 .................................................................................. vii, 10

Cal. Civ. Code § 47(d) ...........................................................................16

Cal. Civ. Code § 48a ..........................................................................19, 20

Cal. Civ. Code § 48.5 ..............................................................................19

Cal. Civ. Code § 340(c) ...........................................................................10

Cal. Civ. Code § 3425.3 ...........................................................................11

California Penal Code Section 273.5 ......................................................4, 15

Fed. R. Civ. P. Rule 9(g)..........................................................................20

N.Y. C.P.L.R. § 215(3) .............................................................................10

## Other Authorities

CAMBRIDGE DICTIONARY,
    https://dictionary.cambridge.org/us/dictionary/english/charge.................14

D. DOBBS ET AL., THE LAW OF TORTS § 533 (2d ed. 2011) ....................14

MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/charge;..............14

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 150(2) .........................10

## **TABLE OF DEFINITIONS**

| | |
|---|---|
| AC | Amended Complaint and Jury Demand filed on November 19, 2020 (D.I. 3) |
| Borrowing Statute | The Delaware Borrowing Statute, 10 *Del. C.* § 8121 |
| Complaint | Amended Complaint and Jury Demand filed on November 19, 2020 (D.I. 3) |
| Defendants | Fox News Network, LLC, Sean Hannity, Laura Ingraham, Maria Bartiromo, Howard Kurtz, Shannon Bream, Bret Baier, Trish Regan, Raymond Arroyo, Jon Scott, Leland Vittert, and Jonathan Hunt |
| Ex. | Exhibits to the Transmittal Declaration of Garrett Rice, filed March 3, 2021 |
| FNN | Fox News Network, LLC |
| Individual Defendants | Sean Hannity, Laura Ingraham, Maria Bartiromo, Howard Kurtz, Shannon Bream, Bret Baier, Trish Regan, Raymond Arroyo, Jon Scott, Leland Vittert, and Jonathan Hunt |
| Remand Motion | Plaintiff's Motion for Remand filed on November 24, 2020 (D.I. 4) |
| Removal Notice | Defendant Fox News Network, LLC's Notice of Removal filed on November 16, 2020 (D.I. 1) |
| Superior Court | The Superior Court of the State of Delaware |

## NATURE AND STAGE OF THE PROCEEDINGS

Mr. Avenatti filed suit in the Superior Court on November 12, 2020.  *Avenatti v. Fox News Network, LLC, et al.*, C.A. No. N20C-11-102-MMJ.   Defendants removed the action on November 16, 2020.  D.I. 1.  Three days later, Mr. Avenatti attempted to amend his complaint, adding Mr. Hunt as a Defendant.  D.I. 3.  On November 24, 2020, Mr. Avenatti filed the Remand Motion.  That Motion remains fully briefed.

## SUMMARY OF THE ARGUMENT

This case involves a textbook example of protected First Amendment speech:  reporting the arrest of a declared potential candidate for President of the United States.  In 2018, after suing then-President Trump and thrusting himself into the public spotlight, Mr. Avenatti publicly announced that he was exploring a presidential candidacy.  His arrest shortly thereafter garnered extensive press coverage.  Over two years later, well after the expiration of the relevant statute of limitations (California's), Mr. Avenatti filed suit based upon purported misstatements regarding certain details that FNN (like others) included in some reports.

This nation's procedural laws when it comes to defamation matters reflect the country's dedication to the First Amendment and its fierce protection of the press's ability to report freely on public events.  To that end, when considering defamation actions, courts allow no space for any forum shopping or libel tourism, understanding that the very defense of a meritless suit can chill speech.[1]  And yet Mr. Avenatti has selected this forum solely in the hopes of evading the procedural and substantive law of the correct forum.  He cannot do so.

---

[1] *See*, *e.g*, *Nunes v. Cable News Network, Inc.*, 2020 WL 2616704, at *1, *6 (E.D. Va. May 22, 2020) (expressing "significant concerns about forum shopping" where none of the parties was "alleged to live or work" in the forum).

Mr. Avenatti's own allegations make this point clear.  He does not allege that his 2018 arrest occurred in Delaware.  Nor does he allege that he resided in Delaware during that time.  He does not allege that any Individual Defendant made any of the challenged statements in Delaware.

Instead, Mr. Avenatti alleges that he resides in California.  He also alleges that his 2018 arrest was by the Los Angeles Police Department.  And several of the alleged defamatory statements were broadcast from California.

The Complaint fails procedurally and substantively.

*First*, Mr. Avenatti's claim is barred by the relevant statute of limitations:  California's one-year statute of limitations for defamation actions.  And Delaware's Borrowing Statute precludes resurrecting time-barred claims by suing here when the state has no meaningful connection to the events at issue.

*Second*, Mr. Avenatti fails to state a claim for defamation.  As a public figure, he can recover only for statements that (1) are materially inaccurate (*i.e.*, were not "substantially true," *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991)), and (2) were published with "'actual malice'—that is, with knowledge that [they were] false or with reckless disregard of whether [they were] false or not," *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).  The Complaint alleges neither.  Mr. Avenatti nitpicks legal technicalities in the reports, but they were substantially true:  their "gist" and "sting" were true as a matter of law.  *See Masson*, 501 U.S. at 517.  Indeed, courts have repeatedly rejected his claim that a report that an arrested individual was "charged" with a crime is defamatory.  Mr. Avenatti's other quibbles also do not render the reports materially inaccurate.  And his conclusory, group-pled allegations are improper and fail to allege actual malice.  Finally, Mr. Avenatti does not allege any cognizable damages.

Each of these reasons—the time-barred nature of his claims, the substantial truth of the challenged statements, the lack of actual malice, and the lack of any cognizable damages—is an independent ground on which to dismiss the Complaint.

## STATEMENT OF FACTS

Mr. Avenatti was once an attorney in California.[2]  *See* AC ¶¶ 21-30.  "In early 2018," after filing "two lawsuits against President Trump," *id.* ¶ 36, he became a high-profile media figure.  As part of an "extensive media strategy," he "was interviewed on television hundreds of times."  *Id.* ¶ 37.  Mr. Avenatti leveraged the "extensive local and national press coverage," *id.* ¶ 29, to become President Trump's "chief antagonist . . . in the court of public opinion," *id.* ¶ 35.

"In approximately July 2018, . . . Mr. Avenatti publicly announced his intention to consider a 2020 candidacy for the White House and began travelling the country."  AC ¶ 42.  Over the next several months, Mr. Avenatti made public appearances typical of a presidential candidate.  *See generally id.* ¶¶ 42-50.  After speaking at an August 2018 Iowa "event widely known for its prominence among leading Democrats seeking the presidency," he "attended events in South Carolina, Florida, Ohio, New Hampshire, Nevada, California and elsewhere" and became a "cable news fixture."  *Id.* ¶ 43.  During this time, Mr. Avenatti also issued a "summary of where [he]

---

[2] In 2019, the California Bar sought to declare Mr. Avenatti an "involuntary inactive member." http://members.calbar.ca.gov/courtDocs/19-TE-30259.pdf.  While the resolution of that action is unclear, the California Bar lists him as "Not Eligible."  http://members.calbar.ca.gov/fal/LicenseeSearch/QuickSearch?FreeText=michael+avenatti&SoundsLike=false.

"[I]n evaluating a motion to dismiss, [the Court] may consider documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."  *Bull Int'l, Inc. v. MTD Consumer Grp., Inc.*, 654 F. App'x 80, 100 (3d Cir. 2016) (quoting *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).  The Court may take judicial notice of this and the other materials cited herein that are not already incorporated into the Complaint—although it need not do so to grant this Motion.  To the extent Mr. Avenatti does not agree on the propriety of taking judicial notice, Defendants shall promptly file a motion requesting that the Court take judicial notice of this material.

st[oo]d on over 20 key issues." @MichaelAvenatti, Twitter (Aug. 27, 2018), https://twitter.com/MichaelAvenatti/status/1029385486958305280. His campaign received substantial press coverage. AC ¶¶ 1, 44. Between August and October 2018, he was "mentioned in over *70,000* print and online news stories . . . and had appeared in more social media posts *than any other perspective* [sic] *Democratic candidate for President*." *Id.* ¶ 49.

Several months after he announced his presidential aspirations, on "November 14, 2018, Mr. Avenatti was arrested by the Los Angeles Police Department." *Id.* ¶ 74. That day, the LAPD "confirm[ed] that . . . [its] Detectives arrested Michael Avenatti on suspicion of domestic violence," that he "was booked . . . on a felony domestic violence charge (273.5 PC)," and that "[h]is bail [wa]s set at $50,000." Ex. 1, @LAPDHQ, Twitter (Nov. 14, 2018), https://twitter.com/lapdhq/status/1062876803587432448?lang=en. Section 273.5 of the California Penal Code makes it a felony to "willfully inflict[] corporal injury" upon a spouse, cohabitant, or similarly situated person. Cal. Penal Code § 273.5. Mr. Avenatti was released, AC ¶ 78, reportedly after posting $50,000 bail. *See, e.g.*, Ex. 2, M. Finnegan, L.A. TIMES, *Police Arrest Porn Star's Lawyer* (Nov. 15, 2018), at 1.

Reminiscent of the LAPD's tweet on the matter, that afternoon, TMZ reported that per "law enforcement sources," Mr. Avenatti had "been arrested for felony domestic violence." Ex. 3, TMZ, *Michael Avenatti Arrested For Felony Domestic Violence . . . I'll be "Fully Exonerated"* (Nov. 15, 2018), at 2. Those sources further indicated that the victim's "face was 'swollen and bruised' with 'red marks' on both cheeks." *Id.* The same report indicated that Mr. Avenatti "screamed repeatedly, 'She hit me first,'" and that "he angrily added, 'This is bulls***, this is f***king bulls***.'" *Id.* at 3. After originally reporting that "the alleged victim was [Mr. Avenatti's] estranged wife," TMZ reported that it was not. *Id.* at 2.

4

A flurry of coverage followed.  The same day, the New York Times reported that "Mr. Avenatti was arrested . . . and booked into jail on a felony charge of 'domestic violence with visible injury.'"  Ex. 4, R. Ruiz, N.Y. TIMES, *Michael Avenatti Arrested On Suspicion Of Domestic Violence In Los Angeles* (Nov. 14, 2018), at 1.  CNN reported "that Michael Avenatti has been arrested for domestic violence.  According to the LAPD, he has been booked on felony domestic violence charges."  Ex. 5, CNN, Anderson Cooper 360 Degrees (Nov. 14, 2018), at 17.[3]  MSNBC reported that Mr. Avenatti "ha[d] been arrested for domestic violence charge."  Ex. 6, MSNBC, The Beat With Ari Melber (Nov. 14, 2018), at 15.  And the Associated Press reported that Mr. Avenatti "was arrested [] and booked on a felony domestic violence charge," and according to "a police spokesman," "[t]he alleged victim [] ha[s] visible injuries."  *See* Ex. 7, THE ASSOCIATED PRESS, *AP News in Brief* (Nov. 14, 2018 11:04 p.m. EST), at 1.

The next morning, CBS reported that Mr. Avenatti "faces a felony charge of domestic violence," and that "[p]olice say [the] incident . . . left the alleged victim with visible injuries." Ex. 8, CBS This Morning (Nov. 15, 2018), at 5.  According to NBC, Mr. Avenatti was "arrested on suspicion of felony domestic violence, a charge that under California law indicates the victim had visible injuries."  Ex. 9, C. Melvin, NBC News:  Today Show (Nov. 15, 2018), at 1.  The Associated Press again reported that Mr. Avenatti was "arrest[ed] on a felony domestic violence charge," and that "the victim had visible injuries."  Ex. 10, THE ASSOCIATED PRESS, *The Latest: Avenatti Released After Domestic Violence Charge* (Nov. 15, 2018), at 2; *see also* Ex. 11, THE ASSOCIATED PRESS, *After Arrest, Michael Avenatti Denies LA Domestic Violence* (Nov. 15, 2018) (discussing the "felony allegation" and "alleged victim['s] . . . visible injuries").[4]  And according

---

[3] The Los Angeles Times, CNN, and MSNBC are "legitimate news outlets."  AC ¶¶ 109-10.

[4] *See also* Ex. 12, E. Viebeck, WASH. POST, *Michael Avenatti Arrested on Suspicion of Domestic Violence, calls allegations 'Completely Bogus'* (Nov. 15, 2018), at 1 (similar).

to the Los Angeles Times, "[t]he allegations were made by a woman who had 'visible injuries,' including bruises." Ex. 2 at 1.

Cable news channels reported on the story multiple times daily.  On November 15, 2018, for example, CNN aired at least ten stories, including a report that, "[a]ccording to the LAPD, [Mr. Avenatti] ha[d] been booked on felony domestic violence charges." Ex. 13, CNN:  Anderson Cooper 360 (Nov. 15, 2018), at 11; *see also* Ex. 14, CNN:  Inside Politics (Nov. 15, 2018), at 3 (similar).[5]  Later that week, CNN reported that Mr. Avenatti's arrest "on suspicion of felony domestic violence" "indicates police believed there was evidence of physical violence."  Ex. 23, CNN:  Erin Burnett Outfront (Nov. 16, 2018), at 14.  An attorney commented on CNN:  "there's definitely probable cause here.  There's someone who was injured.  Someone who has shown substantial injuries to the judge.  The district attorney has charged Avenatti not with a violation, not with a misdemeanor, with the highest level of crime, a felony."  Ex. 24, CNN:  Newsroom, *Trump Arrives In Scorched Northern California* (Nov. 17, 2018), at 14.  And the Washington Post reported that Mr. Avenatti was booked on a "felony domestic violence charge."  Ex. 25, C. Wootson, Jr., Wash. Post, *Michael Avenatti Law Firm Evicted After Not Paying More Than $213,000 In Back Rent* (Nov. 17, 2018), at 1.

On November 20, several news outlets reported that Mr. Avenatti's girlfriend sought "a restraining order [against him] after his arrest last week for domestic violence."  Ex. 26, NBC Nightly News (Nov. 20, 2018), at 1; *see also* Ex. 27, CBS This Morning (Nov. 20, 2018), at 3

---

[5] *See also* Ex. 15, CNN:  New Day (Nov. 15, 2018), at 5; Ex. 16, CNN:  Early Start (Nov. 15, 2018), at 6; Ex. 17, CNN:  Newsroom (Nov. 15, 2018), at 7-8; Ex. 18, CNN:  CNN Right Now (Nov. 15, 2018), at 4; Ex. 19, CNN:  Hala Gorani Tonight (Nov. 15, 2018), at 14-15; Ex. 20, CNN:  Tonight (Nov. 15, 2018), at 9-10; Ex. 21, E. Watkins & C. Mossburg, CNN, *Michael Avenatti Arrested On Suspicion Of Domestic Violence* (updated Nov. 15, 2018, 7:35 AM); Ex. 22, L. Jackson, CNN, *Stormy Daniels Says She Will Get A New Lawyer If Domestic Violence Allegations Against Avenatti Are True* (Nov. 15, 2018, 5:19 PM).

(similar).  Several of the reports included details from the application.  NBC reported that the application included "photographs from after the alleged incident" and indicated that she "was afraid for [her] safety."  Ex. 26 at 1.  Reports later that day indicated that the court granted the requested restraining order.  Ex. 28, CBS News, *Judge Grants Mareli Miniutti A Restraining Order Against Michael Avenatti* (Nov. 20, 2018, 4:28 PM), at 1; *see also* Ex. 29, MJ Lee *et al.*, CNN, *Aspiring Actress Granted Restraining Order Against Michael Avenatti, Describes Physical And Verbal Abuse* (Nov. 21, 2018).

Prosecutors did not file formal charges against Mr. Avenatti as a result of these events.  AC ¶ 102.

FNN reported on this 2018 arrest as well.  As part of that reporting, the network emphasized the presumption of innocence and Mr. Avenatti's denial of the claims, often including video of Mr. Avenatti proclaiming his innocence.  *See, e.g.*, AC ¶ 86, Ex. 30 at 10, 50 (including video of denial); AC ¶ 83, Ex. 31 at 15; AC ¶ 88, Ex. 32 at 3-4; AC ¶ 91, Ex. 33 at 7 (including video of denial); AC ¶ 85, Ex. 34 at 10 (including video of denial and noting that Mr. Avenatti is "denying all the claims" and calls them "an absolute fabrication"); *see also* AC ¶ 87, Ex. 35 at 17 (noting his denials of the claims).  Other coverage emphasized the same presumption of innocence:

- *The Five*, AC ¶ 88, emphasized:  "I don't know if he's guilty.  I don't know if he's innocent.  I don't know what happened.  But any one of us could be in a situation where the public doesn't know the story but you deserve the right to be innocent until proven guilty because no one else knows the story except you and you have to go through a process. . . .  I don't agree with him on anything, but I am here to defend his right to process."  *See* Ex. 32 at 3-4.

- Ms. Regan's report, AC ¶ 92, noted that "Mr. Avenatti has repeatedly denied the allegations" and in "the country we live in, you are innocent until proven guilty."  Ex. 36 at 11; *see also* AC ¶ 87, Ex. 35 at 18 (similar).

- Ms. Ingraham stated that she was "not going to" take "conclusions with no evidence."  *See* AC ¶ 84, Ex. 37 at 11.  She continued, "I don't like the idea of convicting someone on an allegation.  I don't know enough about this case. . . .  I

want to see some more." *Id.*; *see also* AC ¶ 92, Ex. 33 at 9 ("he's innocent until proven guilty").

- Mr. Hannity's November 14 broadcast, AC ¶ 83, emphasized "one very important topic . . . [of] due process, the presumption of innocence." Ex. 31 at 5. Mr. Hannity explained: "I believe he deserves assumption of innocence, due process. Let the legal system do their job." *Id.* at 6.

Other allegedly defamatory reports noted that "his estranged wife said that she was not involved" and quoted a tweet from his first wife that said "he had never been abusive to her or her two daughters and that he is, quote, a good man." AC ¶ 86, Ex. 30 at 10; *see also id.* (displaying tweet from his estranged wife, highlighting the portion saying "He has NEVER been abusive to me or anyone else. He is a good man.")

Like other outlets, FNN discussed the impact of Mr. Avenatti's arrest on his presidential candidacy. *See*, *e.g.*, AC ¶¶ 85, 87, 92, Ex. 34 at 11, Ex. 35 at 18, Ex. 36 at 12; *see also, e.g.*, Ex. 21 at 2 (noting that this arrest "could dash Avenatti's prospects as a . . . Democratic candidate").

In December 2018, Mr. Avenatti publicly "announced that he would not seek the Democratic nomination for President." AC ¶ 98. While the Complaint attributes his withdrawal to "his reputation [having been] destroyed in large part due to the actions of Defendants," *id.*, at the time he attributed it to "respect for [his] family. But for their concerns, I would run." @MichaelAvenatti,            Twitter            (Dec.            4,            2018), https://twitter.com/michaelavenatti/status/1070000911559192577?lang=en.

Over two years later, Mr. Avenatti filed suit challenging various statements made in the days after his arrest. *See*, *e.g.*, AC ¶¶ 82-88, 91. He claims Defendants defamed him by reporting that he was "arrested on a domestic violence charge," *id.* ¶ 82, and "charged" with "felony domestic violence," "assault," and "committing the crime of domestic violence and assault against a woman, resulting in charges," *id.* ¶ 2. *See also id.* ¶ 84 ("booked for hitting a woman"); *id.* ¶¶ 82,

85, 89, 91, 96, 97 ("arrested on a domestic violence charge"); *id.* ¶¶ 83, 85, 87, 92, 96 ("charged with . . . felony domestic violence").  He also asserts that he was defamed by reports that he "le[ft] a woman with a bruised face and a black eye," and that he claimed "[s]he hit me first."  *Id.* ¶¶ 2, 107; *see also id.* ¶¶ 82, 84, 87 (similar).[6]  Mr. Avenatti likewise claims that Defendants defamed him by reporting that he "left court," *id.* ¶ 86.

According to Mr. Avenatti, "Fox News and Defendants" learned information allegedly inconsistent with their reporting, including that he had been arrested, but not charged, *id.* ¶ 76, from an unspecified LAPD official at an unspecified time.  The Complaint does not, however, identify who specifically learned the information or when or how they learned it.

## LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).  "[F]ormulaic recitation[s] of the elements of a cause of action" and "naked assertion[s] devoid of further factual enhancement" are insufficient.  *Id.* (quotation marks and citation omitted).  Instead, "[a] complainant must plead facts sufficient to show that a claim has 'substantive plausibility.'"  *Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co.*, 223 F. Supp. 3d 207, 212 (D. Del. 2016) (quoting *Johnson v. City of Shelby*, 575 U.S. 10, 12 (2014)).  To state a claim "for conduct which is prima facie protected by the First Amendment" requires "more specific allegations than would otherwise be required."  *City of Newark v. Delmarva Power & Light Co.*, 497 F. Supp. 323, 326 (D. Del. 1980) (citation omitted) (dismissing complaint).

---

[6] Mr. Avenatti also claims he was defamed by statements suggesting that he "engag[ed] in acts of moral turpitude," but provides no specifics.  *Id.* ¶¶ 2, 112.

<u>**ARGUMENT**</u>

**I.    MR. AVENATTI'S CLAIM IS BARRED BY CALIFORNIA'S CONTROLLING STATUTE OF LIMITATIONS.**

"[A] federal court sitting in diversity must apply the forum state's borrowing statute to a cause of action arising outside the forum state." *Dymond v. Nat'l Broad. Co.*, 559 F. Supp. 734, 735 (D. Del. 1983).  Delaware's Borrowing Statute requires application of the shorter of its statute of limitations and the statute of the state where the claim arose.  *See* 10 *Del. C.* § 8121.

A claim arises in the state with "the most significant relationship to the occurrence and the parties . . . ." *Elliott v. Marist Bros. of the Schs., Inc.*, 675 F. Supp. 2d 454, 460 (D. Del. 2009) (citations omitted).  In a defamation action, that is usually "the state of the plaintiff's domicile." *Triestman v. Slate Grp., LLC*, 2020 WL 1450562, at *2 (D. Del. Mar. 25, 2020) (citation omitted); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 150(2) (same).  Because Plaintiff has not alleged any reason to depart from this rule, California's statute of limitations applies.  *See* AC ¶ 4 (alleging that Mr. Avenatti resides in California); *Nat'l Iranian Oil Co. v. Mapco Int'l, Inc.*, 983 F.2d 485, 494 (3d Cir. 1992) (affirming dismissal of claim as untimely); *Johnson v. Warner Bros. Entm't, Inc.*, 2017 WL 588714, at *3 (D. Del. Feb. 14, 2017) (similar).

California (and New York, where FNN is headquartered, N.Y. C.P.L.R. § 215(3)), applies a one-year statute of limitations to defamation claims.  Cal. Civ. Code § 340(c).  Mr. Avenatti filed this action on November 12, 2020.  Thus, he can only seek to recover for statements made on or after *November 12, 2019*.  But the most recent statement specifically identified occurred on *November 29, 2018*.  AC ¶ 97; *see also id.* ¶¶ 82-89, 91, 95, 100 (alleging, "[o]n information and belief" that unspecified individuals made unspecified statements "through March 24, 2019").

California's single-publication rule "limits tort claims premised on mass communications to a single cause of action that accrues upon the first publication . . . , spar[ing] the courts from

litigation of stale claims." *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1166-67 (9th Cir. 2011) (citation omitted) (emphasis in original) (applying Cal. Civ. Code § 3425.3). "In print and on the internet, statements are generally considered 'published' when they are first made available to the public." *Yeager v. Bowlin*, 693 F.3d 1076, 1081-82 (9th Cir. 2012) (citation omitted). Because a "defendant does not republish the statement by simply continuing to host the website," *id*. at 1082, it is irrelevant that certain of the articles are "still accessible," AC ¶¶ 89, 96.[7]

Mr. Avenatti tries to revive his claim by alleging that: (1) "within the last year" FNN and Defendant Hunt "re-published" a segment, *id.* ¶ 86; (2) other statements were "re-published and re-broadcast on multiple occasions . . . , including . . . within the last year," *id.* ¶ 104; and (3) "various versions of the articles are still accessible from within Delaware," *id.* ¶¶ 89, 96.[8] But the law is contrary to Mr. Avenatti's wishes—"linking to older writings on the same topic on the same website, does not republish or adopt the content of those older writings for defamation purposes under California law." *Perlman v. Vox Media, Inc.*, 2020 WL 3474143, at *3, *9 (Del. Super. Ct. June 24, 2020) (granting summary judgment and holding that new article containing "hyperlinks to [time-barred] [a]rticles" did not revive claim); *see also Ullum v. Am. Kennel Club*, 21 N.Y.S.3d 210, 212 (N.Y. App. Div. 2015) (allegation "that AKC republished the statement on its website" "insufficient" to revive claim). And in any event, Mr. Avenatti's "naked assertion[s] devoid of further factual enhancement" of stories being "re-published and re-broadcast," AC ¶ 104, are insufficient, *Ashcroft*, 556 U.S. at 678-79.

---

[7] New York also applies a single-publication rule. *See Firth v. State*, 706 N.Y.S.2d 835 (N.Y. Ct. Cl. 2000), *aff'd*, 287 A.D.2d 771 (N.Y. App. Div. 2001).

[8] The Complaint does not allege how Mr. Hunt (who is not listed as the author of the article at issue) caused its republication. *See* D.I. 6 at 3. Mr. Avenatti claims to be relying upon a different article, but refuses to identify it. *See* D.I. 8 at 5 n.3.

The lack of detail regarding purported republication is not only striking when compared to the detailed allegations regarding the untimely statements, but insufficient.

Mr. Avenatti's time-barred claims should therefore be dismissed.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION.

To survive a motion to dismiss, Mr. Avenatti must plead facts that could plausibly support a claim that the publication at issue was "false," "defamatory," "unprivileged," and "has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 54 Cal. Rptr. 3d 775, 804 (Cal. 2007) (citation omitted); *Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1078 (N.D. Cal. 2012). In determining whether a statement is defamatory, courts consider "the totality of the circumstances . . . ." *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 366 (9th Cir. 1995).[9]

Mr. Avenatti improperly utilizes group pleading. "Defamation 'allegations are insufficient [if] they are ascribed to defendants collectively.'" *Harris v. Dillman*, 2008 WL 2383939, at *5 (E.D. Cal. June 6, 2008) (quoting *Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1020 (N.D. Cal. 2006)). Instead, the Complaint must make sufficient allegations as to each Defendant. *See Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018-19 (N.D. Cal. 2017) (dismissing complaint that relied upon group pleading). Mr. Avenatti does not.

The Complaint fails to state a claim for defamation because: (1) the challenged statements are substantially true; (2) it does not allege adequately that any Defendant spoke with actual malice; and (3) it fails to allege any recoverable damages.

---

[9] While California law applies, *Johnson*, 2017 WL 588714, at *3, the relevant First Amendment principles apply regardless of what law applies.

A.    The Challenged Statements Are Substantially True.

To be actionable, a statement must be materially false.  "Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'"  *Masson*, 501 U.S. at 517 (citation omitted); *see also Maheu v. Hughes Tool Co.*, 569 F.2d 459, 465-66 (9th Cir. 1978).  As such, a statement must produce "a different effect on the mind of the reader from that which the pleaded truth would have produced."  *Masson*, 501 U.S. at 517.  Where a statement is "substantially true" as a matter of law, dismissal is appropriate.  *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 985 (9th Cir. 2002) (affirming dismissal based upon substantial truth); *Campanelli v. Regents of Univ. of Cal.*, 51 Cal. Rptr. 2d 891, 897 (Cal. Ct. App. 1996) (same).

The gravamen of Mr. Avenatti's claim is that while he was arrested "on suspicion" of domestic violence, he was never "charged" with a crime.  *See* AC ¶¶ 78, 79, 107.  According to Mr. Avenatti, "there [i]s a marked, material difference – factually, legally, reputationally and culturally – between someone being *arrested* on suspicion of having committed a crime and someone actually being *charged* with a crime."  *Id.* ¶ 79.

Mr. Avenatti is wrong as a matter of law.  In *Rouch v. Enquirer & News of Battle Creek Michigan*, 487 N.W.2d 205, 217-18 (Mich. 1992), the court found a report that a plaintiff who was arrested and booked, but never formally charged, was "charged" with sexual assault was substantially true.  It was "apparent" that "charged" "may be used in a popular sense as a synonym for accuse," *id.* at 218, and "a formalistic interpretation . . . belies any attempt to ascertain the 'gist' or 'sting' of the article to the lay reader," *id.* at 216.  *See also Hildebrant v. Meredith Corp.*, 63 F. Supp. 3d 732, 740 (E.D. Mich. 2014) (report that plaintiff who was "never formally charged" was "accused of 'stealing'" substantially true); *Rosales v. City of Eloy*, 593 P.2d 688, 690 (Ariz. Ct. App. 1979) (directing judgment for defendant:  charges "denotes 'accusations' or 'allegations'

13

and does not necessarily mean the filing of criminal charges"). This rule applies even when the "charges" involve civil claims. *See Handelsman v. S.F. Chronicle*, 90 Cal. Rptr. 188, 189 & n.1 (Cal. Ct. App. 1970) (report that individuals who faced civil conversion claim were "charged . . . with outright theft" substantially true) (emphasis omitted); *Sivulich v. Howard Publ'ns, Inc.*, 466 N.E. 2d 1218, 1220 (Ill. App. Ct. 1984) (similar; rejecting reliance on "technical, legal definition").

These cases reflect the well-established principle that "'[t]echnical inaccuracies in legal terminology employed by nonlawyers' are not actionable." *Hildebrant*, 63 F. Supp. 3d at 739 (quotation omitted) (alteration in original); *see also Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425, 432 (D. Md. 2005) ("a long line of cases holds" that "technical errors in legal nomenclature" do not render a statement substantially false) (citation omitted).[10] Indeed, "[s]tatements about crimes are often technically incorrect but substantially true." D. DOBBS ET AL., THE LAW OF TORTS § 533 (2d ed. 2011). As a result, using a popular (but technically inaccurate) meaning of a legal term is not defamatory. *See, e.g.*, *Simonson v. United Press Int'l, Inc.*, 654 F.2d 478, 482 (7th Cir. 1981) (reporting charge of "rape" substantially true where charge was "sexual assault"); *Dostert v. Wash. Post Co.*, 531 F. Supp. 165, 168 (N.D. W. Va. 1982) ("[A] headline which characterizes the entry of a nolo plea as an admission of guilt cannot be considered false . . . ."); *Piracci v. Hearst Corp.*, 263 F. Supp. 511, 514 (D. Md. 1966) (report that plaintiff was charged with "possession of marijuana" substantially true where charge was "delinquency due

---

[10] While the Court need not resolve this issue, these statements were entirely true. "Charge" means "to assert as an accusation." MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/charge; *see also* CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/charge (similar). "An arrest entails an official accusation, supported by probable cause, that the suspect has committed a crime." *People v. Tom*, 331 P.3d 303, 324 (Cal. 2014) (Liu, J., dissenting). And the statute identified by the LAPD concerns "domestic violence crimes." *People v. Cross*, 187 Cal.Rptr.3d 139, 141 (Cal. 2015).

to the act of possessing marijuana"), *aff'd*, 371 F.2d 1016 (4th Cir. 1967); *Brewer v. Dungan*, 1993 WL 441306, at *1 (N.C. Super. Ct. June 30, 1993) (dismissing complaint regarding report that plaintiff was convicted of felony assault where conviction was for misdemeanor assault); *Hopkins v. Keith*, 348 So. 2d 999, 1001 (La. Ct. App. 1977) (report that plaintiff was "convicted of running a gambling game" substantially true where plaintiff forfeited bond based on charge of "letting a disorderly house") (citation omitted).

Thus, the statements would not have produced "a different effect on the mind of the reader." *Masson*, 501 U.S. at 517.[11]  Rather, the "facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion" that he was guilty of what was reported:  a felony involving "corporal injury resulting in a traumatic condition" to a woman.  *People v. Kraft*, 99 Cal. Rptr. 2d 1, 40 (Cal. 2000); Cal. Penal Code § 273.5; *see also Maryland v. Pringle*, 540 U.S. 366, 371 (2003).  As such, the reports were substantially true.[12]

---

[11] This is particularly true in light of the reports' (1) emphasis on the presumption of innocence, (2) inclusion of denials by Mr. Avenatti and supporting statements from his ex- and estranged wives, and (3) expressions of uncertainty as to truth of the allegations.  *See* pp. 7-8, *supra*.  The reports cannot be interpreted as stating that Mr. Avenatti was guilty.  "'Statements that cannot be reasonably interpreted as stating actual facts' cannot form the basis of a defamation claim." *Wheeler v. Twenty-First Century Fox*, 322 F. Supp. 3d 445, 453 (S.D.N.Y. 2018) (citation omitted); *see also Ferlauto v. Hamsher*, 88 Cal. Rptr. 2d 843, 851 (Cal. Ct. App. 1999) (affirming dismissal of claim without leave to amend).

The same is true for statements during Mr. Hannity's November 14 program, Ms. Ingraham's November 14 and 15 programs, the November 15 *The Five* program, and Ms. Regan's November 20 program—all of which would have been understood to be commentaries on political and justice issues, and not news reports.  *See* Exs. 31-33, 36-37.  Such statements, "when taken in context with the other information" in the broadcast, would not be understood to be statements of fact.  *Beilenson v. Superior Ct.*, 52 Cal. Rptr. 2d 357, 362-63 (Cal. Ct. App. 1996).

[12] The Complaint's other quibbles also do not change the "gist or sting" of the report.  *See* AC ¶ 107.  Mr. Avenatti would fare no better with a report that the alleged victim was his girlfriend, not his wife.  *See, e.g.*, *Rouch*, 487 N.W.2d at 210 (report that plaintiff's children identified him substantially true where former stepchildren identified him).  And because the statute at issue required "corporal injury," it is irrelevant whether the victim had "bruises" or a "black eye," or what—if anything—Mr. Avenatti said about who hit who first.

For the same reason, the reports fall within California's "fair report" privilege. This "absolute privilege" protects any "fair and true report in . . . a public journal, of . . . a judicial . . . proceeding, . . . of anything said in the course thereof, or . . . of a verified charge or complaint made by any person to a public official, upon which complaint a warrant has been issued." Cal. Civ. Code § 47(d). This privilege also shields substantially correct reports that accurately reflect the "gist or sting" of the events. *Dorsey v. Nat'l Enquirer, Inc.*, 973 F.2d 1431, 1436 (9th Cir. 1992) (quoting *McClatchy Newspapers, Inc. v. Superior Ct.*, 234 Cal. Rptr. 702, 711 (Cal. Ct. App. 1987)). As such, Defendants' reports are privileged. *See Green v. Cortez*, 199 Cal. Rptr. 221, 224 (Cal. Ct. App. 1984) (reports regarding police investigations within privilege).[13]

### B.     Mr. Avenatti Has Not Pled Actual Malice As To Any Defendant.

As a public figure, Mr. Avenatti can only recover for defamatory statements made with "actual malice," *Masson*, 501 U.S. at 510, "a term of art denoting deliberate or reckless falsification," *id.* at 499.

Candidates are quintessential public figures. *See Monitor Patriot Co. v. Roy*, 401 U.S. 265, 271 (1971).[14] And "[p]ublic discussion about the qualifications of a candidate . . . is probably the

---

[13] To the extent Mr. Avenatti claims he was defamed by references to him as a "porn lawyer," AC ¶ 30, he embraced that label in his stump speech. *See, e.g.*, Ex. 38, Andrew J. Tobias, CLEVELAND.COM, *Voter Registration Ends, Early Voting In Ohio Begins This Week* (Oct. 8, 2018), at 5 (quoting Avenatti: "Some of you may be asking, what is some porn lawyer doing here in Cincinnati"); Ex. 39, Rob Wolfe, AP ALERTS, *Michael Avenatti Visits New Hampshire As He Considers 2020 Bid* (Aug. 20, 2018), at 1 (same). And such commentary (like others in the reports at issue) is nonactionable rhetorical hyperbole. *See, e.g.*, *Clifford v. Trump*, 339 F. Supp. 3d 915, 925-28 (C.D. Cal. 2018) (dismissing claim), *aff'd*, 818 F. App'x 746 (9th Cir. 2020), *petition for cert. filed*, No. 20-602 (Oct. 29, 2020).

[14] It is irrelevant that Mr. Avenatti had not formally committed to run. Having "publicly announced his intention to consider" running, AC ¶ 42, he "enter[ed] the political arena" and invited the "[v]igorous reportage . . . necessary for the optimal functioning of democratic institutions," *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 687 (1989).

And in any event, he "thrust [himself] to the forefront" of public matters, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974), through "extensive media strategy," AC ¶ 37. As a result, he

strongest possible case for application of the [actual malice] rule." *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 300-01 (1971). Because reports regarding candidates "must be allowed the broadest possible latitude," *Vogel v. Felice*, 26 Cal. Rptr. 3d 350, 360 (Cal. Ct. App. 2005), "the law makes it difficult for public figures, such as political candidates, to prevail in defamation suits," *Bell v. Nat'l Republican Cong. Comm.*, 187 F. Supp. 2d 605, 610 (S.D. W. Va. 2002).

Actual malice is a "daunting" standard, *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996), that "does not connote ill will or improper motivation," *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 359 (3d Cir. 2020). *See also Harte-Hanks*, 491 U.S. at 666-67.[15] It requires that the speaker know the statement is false or speak with "reckless disregard of whether it [i]s false." *N.Y. Times*, 376 U.S. at 279-80. Reckless disregard requires a "high degree of awareness of . . . probable falsity," "serious doubt[] as to the truth," or "purposeful avoidance of the truth" despite "obvious reasons to doubt [its] veracity." *Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1250-51 (9th Cir. 1997) (citation omitted). This subjective test makes allegations regarding objective standards, AC ¶ 2, a "fail[ure] to conduct even the most basic research, inquiry, reporting and investigation," *id.* ¶ 111, and unrelated "admissions," *id.* ¶ 114-27, "irrelevant," *Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 686 (9th Cir. 1990). *See also Harte-Hanks*, 491 U.S. at 665, 688; *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

Courts regularly dismiss complaints for failing to carry this heavy burden. *See, e.g.*, *Resolute Forest Prods.*, 302 F. Supp. 3d at 1018-19 (dismissing complaint); *Beilenson*, 52 Cal. Rptr. 2d at 362. Indeed, "every circuit that has considered the matter has applied the

---

"enjoy[s] significantly greater access" to the media and has "a more realistic opportunity to counteract false statements than private individuals normally enjoy." *Gertz*, 418 U.S. at 344. For those reasons, he was already a public figure before he announced his potential candidacy.

[15] As a result, allegations regarding unspecified Defendants' perceptions and communications regarding the viability of Mr. Avenatti's candidacy are irrelevant. *See* AC ¶¶ 1, 56, 57, 60.

*Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

Mr. Avenatti's conclusory, group-pleading does not make it plausible that any Defendant had a "high degree of awareness of . . . probable falsity" or "serious doubts," or "purposeful[ly] avoid[ed]" the truth. *Eastwood*, 123 F.3d at 1251 (citation omitted). An unspecified report that Mr. Avenatti had not been charged does not "exemplif[y]" "actual malice," AC ¶ 101, because, among other things, it does not tie the "state of mind required for actual malice" to any speaker. *See N.Y. Times,* 376 U.S. at 263, 287 (rejecting argument that contrary earlier report demonstrated malice); *Michel*, 816 F.3d at 705 (affirming dismissal of claim and rejecting argument having contrary information established actual malice).[16] And the repeated reminders that Mr. Avenatti was presumed innocent, and inclusion of his denial and statements by his ex- and estranged wives, *see* pp. 7-8, *supra*, "undermine the claims of malice," *Michel*, 816 F.3d at 703.

Mr. Avenatti's inability to plead actual malice is not surprising. The reports at issue concern an event that he admits occurred: his arrest (even if he avoids the details, *see* AC ¶ 74). That makes it particularly difficult to allege actual malice. *See, e.g.*, *Reed v. Gallagher*, 204 Cal. Rptr. 3d 178, 192-94 (Cal. Ct. App. 2016) (report that plaintiff who made payment under a settlement was "ordered to pay back fees" not defamatory); *Annette F. v. Sharon S.*, 15 Cal. Rptr. 3d 100, 117 (Cal. Ct. App. 2004) (calling person a "convicted perpetrator of domestic violence" not actionable where proceeding was a non-criminal family court matter). *See generally St. Amant*,

---

[16] *See also Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (affirming dismissal and finding general allegation that statements "'were known . . . to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity' . . . entirely insufficient") (citation omitted).

390 U.S. at 732 (actual malice could exist where "a story is fabricated . . . , is the product of his imagination, or is based wholly on an unverified anonymous telephone call").  And the similar (and often identical) reports by "legitimate" outlets, *see* pp. 4-7, *supra*, undermine the claim that any inaccuracy involved actual malice.  *See Jackson v. Paramount Pictures Corp.*, 80 Cal. Rptr. 2d 1, 15 (Cal. Ct. App. 1998) (affirming dismissal and noting similar report).

### C.     Mr. Avenatti Has Not Alleged Any Recoverable Damages.

The Complaint also does not allege any recoverable damages.  California's retraction statute requires that to recover general damages—including "damages for loss of reputation," AC ¶ 128—Mr. Avenatti must have requested a retraction within 20 days of publication.  Cal. Civ. Code §§ 48a(a), (b), (d); 48.5.  *See generally In re Cable News Network*, 106 F. Supp. 2d 1000, 1002 (N.D. Cal. 2000).  Otherwise, he "shall only recover special damages."  Cal. Civ. Code § 48a(a).[17]  "Whether [a plaintiff] met the requirements of the statute is a question of law."  *O'Hara v. Storer Commc'ns, Inc.*, 282 Cal. Rptr. 712, 717 (Cal. Ct. App. 1991).

California's retraction statute "represents a significant change from common law libel," enacted as "part of a legislative trend restricting the right to recover defamation damages . . . and protect the public interest in the free dissemination of news."  *Anschutz Entm't Grp., Inc. v. Snepp*, 90 Cal. Rptr. 3d 133, 163 (Cal. Ct. App. 2009) (citation omitted) (reversing denial of motion to strike).  As a part of California's substantive defamation law, Section 48 applies in actions outside of California.  *See King v. Am. Broad. Cos.*, 1998 WL 665141, at *4 (S.D.N.Y. Sept. 28, 1998) (dismissing complaint).

---

[17] Section 48(a) also precludes Mr. Avenatti from recovering punitive damages.  Cal. Civ. Code § 48a(b); *Kalpoe v. Superior Ct.*, 166 Cal. Rptr. 3d 80, 88 (Cal. Ct. App. 2013).

Because Mr. Avenatti does not (and cannot) allege that he demanded a retraction, he can only recover for harm to his "property, business trade, profession, or occupation." Cal. Civ. Code § 48a(d)(2) (defining "special damages"). Rather than allege special damages, however, the Complaint disclaims the need to do so. *See* AC ¶ 129 (claiming that Mr. Avenatti "is not required . . . to plead or prove special damages"). But a complaint that neither alleges "a sufficient demand for retraction" nor pleads "special damages" with specificity, *see* Fed. R. Civ. P. Rule 9(g), does not state a claim, *In re Cable News Network*, 106 F. Supp. 2d at 1001-02 (dismissing claims without leave to amend). *See also Anderson v. Hearst Publ'g Co.*, 120 F. Supp. 850, 853 (S.D. Cal. 1954) (same); *Anschutz Entm't Grp.*, 90 Cal. Rptr. 3d at 164-65 (finding "general allegations" of special damages "insufficient").

The United Stated District Court for the Southern District of New York recently dismissed a complaint without leave to amend pursuant to Section 48(a) where, as here, the plaintiff sought to recover for defamation, but did not allege that he had sought a retraction. *See Nunes v. Cable News Network, Inc.*, 2021 WL 665003, at *2 (S.D.N.Y. Feb. 19, 2021). First, the court rejected the plaintiff's argument that Section 48(a) "is a matter of procedure" and, as a result, "the law of the . . . forum . . . should apply instead." *Id.* at *6. The court then held that in light of the applicability of Section 48(a), the complaint, which "use[d] the phrase 'special damages'" but "provide[d] no further indication of the basis or quantum of any special, or economic, element of his damages claim," "fail[ed] to meet the requirements of Rule 9(g) and fail[ed] to state a claim upon which relief may be granted." *Id.* at *7-8.

Mr. Avenatti's failure to allege that he demanded a retraction and to plead special damages with specificity provides an additional, independent basis on which to dismiss the Complaint.

## **CONCLUSION**

Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Respectfully submitted,

ROSS ARONSTAM & MORITZ LLP

*Of Counsel*:

Eric M. George (*admitted pro hac*)
Richard A. Schwartz
Katherine F. Murray
BROWNE GEORGE ROSS
  O'BRIEN ANNAGUEY & ELLIS LLP
2121 Avenue of the Stars
Suite 2800
Los Angeles, California 90067
(310) 274-7100

March 3, 2021

*/s/ David E. Ross*
David E. Ross (Bar No. 5228)
Eric D. Selden (Bar No. 4911)
R. Garrett Rice (Bar No. 6242)
100 South West Street, Suite 400
Wilmington, Delaware 19801
(302) 576-1600
dross@ramllp.com
eselden@ramllp.com
grice@ramllp.com

*Attorneys for Fox News Network, LLC, Sean Hannity, Laura Ingraham, Maria Bartiromo, Howard Kurtz, Shannon Bream, Bret Baier, Trish Regan, Raymond Arroyo, Jon Scott, Leland Vittert, and Jonathan Hunt*