IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MICHAEL AVENATTI,

    *Plaintiff*,

    v.

FOX NEWS NETWORK, LLC, et al.,

    *Defendants.*

No. 20-cv-01541-SB

---

R. Karl Hill, SEITZ, VAN OGTROP & GREEN, P.A., Wilmington, Delaware.

*Counsel for Plaintiff.*

David E. Ross, Eric D. Selden, R. Garrett Rice, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; Eric M. George, Richard A. Schwartz, Katherine F. Murray, BROWNE GEORGE ROSS O'BRIEN ANNAGUEY & ELLIS LLP, Los Angeles, California.

*Counsel for Defendants.*

---

**MEMORANDUM OPINION**

August 13, 2021

BIBAS, *Circuit Judge*, sitting by designation.

News outlets are not liable for minor mistakes, especially when reporting on public figures and matters of public concern. Michael Avenatti, a famous lawyer, was arrested on suspicion of domestic violence. Fox News covered his arrest. He sued, claiming that its reporting defamed him. But most of its statements were substantially true. And Avenatti does not plausibly plead that Fox or its employees knew that the statements were false or recklessly disregarded that possibility. He also fails to allege any recoverable damages. I will thus dismiss his complaint.

## I. BACKGROUND

In 2018, Avenatti thrust himself into the national spotlight by "develop[ing] and execut[ing] an extensive media strategy" as then-President Trump's "fiercest, most vocal critic." Am. Compl. ¶ 37, D.I. 3. He announced that he was considering running for President. *Id.* ¶ 42. But his fortunes soon took a turn for the worse: Avenatti was arrested by the Los Angeles Police Department for suspected domestic violence. *Id.* ¶¶ 74, 78, 79. Given his celebrity, many news outlets covered this incident.

### A. Fox News reports Avenatti's arrest

Fox News Network was no exception. The night of the arrest, its hosts reported extensively on Avenatti. Bret Baier, for instance, said that "[Avenatti] has been arrested on a domestic violence charge." *Id.* ¶ 82. He noted that Avenatti's estranged wife had filed a felony domestic violence report and that "her face was swollen and bruised." *Id.* Later, Sean Hannity commented that he had "been charged with [a] serious charge, that would be felony domestic violence." *Id.* ¶ 83. And a scrolling screen

2

statement on the *Ingraham Angle* read: "Los Angeles Police said Wed. Avenatti had been charged with felony domestic violence …." *Id.* ¶ 84 (formatting altered).

That night and throughout the week, others kept reporting that he had been arrested on a domestic violence charge. *See, e.g.*, *id.* ¶¶ 85–88, 91–92, 97. Other coverage focused on the alleged victim. Maria Bartiromo stated that the victim "was all bruised, [with a] black eye." *Id.* ¶ 87. Avenatti, she said, was "running after" the woman before his arrest, saying, "[S]he hit me first." *Id.*; *see also id.* ¶ 84. Still other commentary was more colorful: Raymond Arroyo implied that Avenatti was familiar with "bull__." *Id.* ¶ 84. Laura Ingraham opined that Avenatti was an "arrest waiting to happen" and added that he "has a heck of a right hook." *Id.* ¶ 91.

Fox News also published articles about the arrest on its website. One article said he had been charged. *Id.* ¶ 89. A second said that he "made bail after his arrest on domestic violence charges." *Id.* And the last noted that he was "formally charged last week with felony domestic violence." *Id.* ¶ 96.

**B. This suit**

Avenatti sued Fox News and its correspondents for defamation in Delaware state court. D.I. 1-1. Defendants removed to this court, and I denied Avenatti's motion to remand. D.I. 23.

Avenatti complains that Defendants lied about the details of his arrest: He does not deny that he was taken into custody, nor that he got out on bail. But he was not "*charged* … with any crime relating to any alleged incident involving domestic violence or assault." Am. Compl. ¶ 107 (emphasis added). His estranged wife was not involved, nor did she file a complaint. *Id.* There was no "incident or allegation

3

involving any witness, victim or woman" being left with bruises or a black eye. *Id.* And Avenatti did not run after a woman yelling, "She hit me first!" *Id.*

Avenatti alleges that these statements have repeatedly been "re-published and re-broadcast … including … within the last year" before the Complaint. *Id.* ¶ 104. On this motion to dismiss, I must take his allegations as true. *Vorchheimer v. Phila. Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018).

Defendants now move to dismiss. D.I. 11. They attach full transcripts of the challenged broadcasts to their motion. D.I. 13-2, exs. 30–37, at 66–249; D.I. 26, at 2–4. These documents are "integral to or explicitly relied upon in the complaint," so I can refer to them without converting the motion to dismiss into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks and italics omitted). They also ask me to take judicial notice of outside news articles, broadcasts, and records. D.I. 26, at 2. Because I need not consider these, I deny their request as moot. Avenatti failed to respond to Defendants' motion.

## II. CALIFORNIA LAW GOVERNS THIS SUIT

Defamation is a "state cause of action." *Marcone v. Penthouse Int'l Mag. for Men*, 754 F.2d 1072, 1077 (3d Cir. 1985). So Avenatti must prove that he was defamed "within the meaning of state law." *Id.* (quotation marks omitted). According to Defendants, that state is California. Def.'s Br. at 12 n.9.

I agree. In tort suits, Delaware courts apply the law of the state that has the "most significant relationship" to the parties and the issue at hand. Restatement (Second) of Conflicts § 145(1) (1971); *see Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del.

1991). In multistate defamation cases, that is typically the state where the injured party is domiciled, so long as the defamatory statements were published there. Restatement (Second) of Conflicts § 150(2); *Aoki v. Benihana, Inc.*, 839 F. Supp. 2d 759, 765–66 (D. Del. 2012). Avenatti is a resident and citizen of California. Am. Compl. ¶ 4; D.I. 4, at 5. Defendants published and broadcast the statements there. Avenatti has not shown that he suffered a unique, or more significant, injury in a different state. So I will apply California law.

### III. MANY CHALLENGED STATEMENTS ARE NOT DEFAMATORY

Many of the statements that Avenatti contests do not count as defamation. Some comments, while caustic, are protected opinion. Many others are substantially true. But opinions and minor inaccuracies cannot anchor a defamation claim. And the status of speech as an opinion or a minor falsehood is a question of law that I can decide on a motion to dismiss. *See Ferlauto v. Hamsher*, 88 Cal. Rptr. 2d 843, 849, 851 (Cal. Ct. App. 1999).

**A. Some of the statements are non-actionable opinions**

Opinions that do not imply a false factual assertion are constitutionally protected. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974); *Baker v. L. A. Herald Exam'r*, 721 P.2d 87, 90 (Cal. 1986). These statements cannot be proven right or wrong, so they cannot defame.

Take Arroyo's joke that Avenatti is familiar with "bull__." Am. Compl. ¶ 84. Or take Ingraham's ridiculing him for being an "arrest waiting to happen" and for having a "heck of a right hook." *Id.* ¶ 91. Though Avenatti complains about these remarks, he does not specifically allege that they are *false*. Nor could he. Their language and

5

context reveal that they are opinions. *See Baker*, 721 P.2d at 90–91. Arroyo couched his comment with the qualifier "I think." Am. Compl. ¶ 84. After Ingraham's insult about his "right hook," she immediately said "I'm joking. It's a joke." D.I. 13-2, ex. 33, at 170. When a statement is "clearly a mere joke … there is no defamation." *Couch v. San Juan Unified Sch. Dist.*, 39 Cal. Rptr. 2d 848, 854 (Cal. Ct. App. 1995). And this "rhetorical hyperbole" is often used on cable news, particularly when politics is involved. *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 182–83 (S.D.N.Y. 2020) (quoting *Clifford v. Trump*, 339 F. Supp. 3d 915, 925 (C.D. Cal. 2018)).

Opinions based on disclosed facts are often protected too. *Franklin v. Dynamic Details, Inc.*, 10 Cal. Rptr. 3d 429, 437–38 (Cal. Ct. Ap. 2004). Avenatti is upset that Ingraham mocked him for being an "arrest waiting to happen." Am. Compl. ¶ 91. But she expressly based her opinion on the fact that "Senate judiciary chairman Chuck Grassley made a criminal referral [about] Avenatti … for making false statements to Congress." D.I. 13-2, ex. 33, at 169. Listeners were "free to accept or reject" her opinion "based on their own independent evaluation of the facts." *Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995). This statement is not defamatory.

### B. Many of the statements are substantially true

Defamatory speech must be *materially* false. *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991); *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007). "Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *Masson*, 501 U.S. at 517 (quoting *Heuer v. Kee,* 59

6

P.2d 1063, 1064 (Cal. Dist. Ct. App. 1936)). The heart of Avenatti's case is just such a minor error.

Avenatti complains that Defendants said he was arrested on *charges* of domestic violence. He admits that he was arrested. And he does not deny that he was arrested due to *suspected* domestic violence. But he insists he was never formally charged. And to Avenatti, there is a "marked, material difference … [between] being *arrested* [by police] on suspicion of having committed a crime and … actually being *charged* with a crime" in court. Am. Compl. ¶ 79.

There is a difference to lawyers. But I assess the statements in question "from the perspective of the average reader, not a person trained in the technicalities of the law." *Ferlauto*, 88 Cal. Rptr. 2d at 851. And charge "may be used in a popular sense as a synonym for accuse." *Rouch v. Enquirer & News of Battle Creek Mich.*, 487 N.W.2d 205, 218 (Mich. 1992) (finding a report that a plaintiff was charged with sexual assault was substantially true even though he was only arrested, not formally arraigned); *see also Charge* (def. 16a), *Oxford English Dictionary* (2d ed. 1989) ("accusation"). Plus, Avenatti was not merely accused—he was arrested and taken into custody. Police are supposed to have good reason to arrest people. So to the average reader, the "gist" and the "sting" would be the same had Defendants reported only that he was arrested for *suspected* domestic violence.

Indeed, throughout the broadcasts, Defendants used "charge," "allegation," and "accusation" interchangeably. After Hannity said that Avenatti faced a "serious charge," he noted that "[h]e is denying these *allegations*." Am. Compl. ¶ 83; D.I. 13-2,

7

ex. 31, at 131 (emphasis added). So too on *Trish Regan Primetime*: "Mr. Avenatti has repeatedly denied the allegations and last time I checked, you're innocent until proven guilty, right?" *Id.*, ex. 36, at 228. And while the screen graphic on *The Five* said he was arrested on a "domestic violence charge," a host said only that he was "arrested on suspicion of domestic violence." *Id.*, ex. 32, at 143. *See also id.*, ex. 30, at 75; *id.*, ex. 37, at 245.

Avenatti has thus failed to state a defamation claim based on these remarks; any factual error was too small to count. So he is left with just three statements: (1) the victim was his estranged wife; (2) she was bruised with a black eye; and (3) he ran after her, saying, "She hit me first."

### IV. AVENATTI FAILS TO PLEAD ACTUAL MALICE

But Avenatti's defamation suit cannot win on these statements either. He is undoubtedly a public figure. Indeed, his self-described media campaign and potential presidential candidacy certainly "invite[d] attention and comment." *Gertz*, 418 U.S. at 345. So he must plead actual malice: Defendants either knew their statements were false or made them with "reckless disregard" for their truth. *McCafferty v. Newsweek Media Grp.*, 955 F.3d 352, 359 (3d Cir. 2020) (internal quotation marks omitted).

Yet all he provides are conclusory statements and implausible assertions. This is not enough. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### A. Avenatti has not plausibly pleaded that Defendants knowingly lied about his arrest

Most of Avenatti's allegations are devoid of facts. He repeatedly alleges that "Defendants knew these statements to be false when they were made. And yet Defendants made them maliciously." *See, e.g.*, Am. Compl. ¶¶ 82–88. But this merely restates the elements of actual malice. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703–04 (11th Cir. 2016).

True, he provides some facts for one challenged statement. In its first broadcast on the day of his arrest, Defendants claimed that an ex-wife was involved. Am. Compl. ¶ 82. But on the afternoon of the arrest, his two ex-wives publicly stated that he had not assaulted them. *Id.* According to Avenatti, that means that Defendants knew that the victim was not his ex-wife but reported it anyway. But he has not claimed that Defendants learned of the ex-wives' denials *before* the initial broadcast. Indeed, they reported their denials the next morning. D.I. 13-2, ex. 30, at 75. That makes it unlikely that Defendants had ever *"purposeful[ly]* avoid[ed] the truth." *See Tucker*, 237 F.3d at 286 (emphasis added).

As for the reports that the victim was bruised and Avenatti ran after her screaming, he pleads nothing specific. He simply alleges that Defendants learned their reporting, as a whole, was untrue from "other legitimate news outlets such as the *Los Angeles Times*, CNN, MSNBC and others." Am. Compl. ¶ 110. Yet he does not identify *what* Defendants learned from these "legitimate" outlets that cast doubt on their stories. So the allegation is too vague to plausibly show that Defendants acted recklessly.

9

### B. Defendants' alleged failure to investigate does not show that they acted recklessly

Having failed to plausibly show that Defendants knew that their reporting was false, Avenatti next claims that they should have done more to look into the details of his arrest. He charges Defendants with "fail[ing] to conduct even the most basic research, inquiry, reporting and investigation." Am. Compl. ¶ 111. But "even an extreme departure from professional standards, without more, will not support a finding of actual malice." *Tucker v. Fischbein,* 237 F.3d 275, 286 (3d Cir. 2001) (Alito, J.).

To show that Defendants knew that they should be suspicious of his arrest, Avenatti spins an elaborate tale: Jacob Wohl, a known conspiracy theorist, had lobbed false allegations at other public figures. Am. Compl. ¶¶ 64–70. After Avenatti's arrest, Wohl publicly took credit for his downfall. *Id.* ¶¶ 75–76. So Defendants must have known that his arrest was a set-up. *Id.* ¶¶ 70, 76.

True, courts may infer actual malice where a reporter has "obvious reasons to doubt the veracity of the informant or the accuracy of his reports," yet fails to investigate. *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). But Avenatti does not allege that Defendants used Wohl as a *source*. Even if they did know "the need to be extremely cautious when reporting any story … for which Jacob claimed responsibility," that demonstrates, at most, a *potential* failure to investigate. Am. Compl. ¶ 70. And that is not enough for actual malice. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989).

I find Avenatti's charge of actual malice implausible. That failure bars his suit.

### V. AVENATTI FAILS TO ALLEGE SPECIAL DAMAGES

Avenatti makes one final error. California law requires that a plaintiff who seeks "damages for the publication of a libel in a daily or weekly news publication, or of a slander by radio broadcast" ask for a correction within twenty days of his knowledge of the publication. Cal. Civ. Code § 48a(a); *id.* § 48.5(4). If he does not, all he can recover are limited "special damages." *Id.* § 48a(a). This retraction statute is "a substantive law limiting a plaintiff's recovery on a defamation claim," so it applies in federal court. *Nunes v. CNN, Inc.*, __ F. Supp. 3d __, 2021 WL 665003, at *6 (S.D.N.Y. Feb. 19, 2021).

Avenatti did not ask for a retraction. Def.'s Br. 20. So his claim is limited to "special damages," which he must "allege[ ] and prove[ ]." Cal. Civ. Code § 48a(a), (d)(2). But he has not done this either. Indeed, he denies that he is required to "plead or prove special damages." Am. Compl. ¶ 129. So I dismiss the case on this ground as well. *See Nunes*, 2021 WL 665003, at *7–8; Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated.").

\* \* \* \* \*

Avenatti dislikes how Fox News covered his arrest. But he cannot overcome the truthfulness of the gist of Fox's coverage—he was, after all, arrested for suspected domestic violence. Plus, he has not shown that Defendants knew, or deliberately ignored, any inaccuracies in their reporting. And he expressly disclaims the need to allege special damages, as he must under California law. Perhaps Avenatti can cure the actual malice and damages defects for some of his claims. So I will dismiss his complaint without prejudice.